UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JEWELL RATLIFF | § | CIVIL ACTION NO. 19-CV-11299 |
| VERSUS | § | JUDGE BARRY W. ASHE |
| MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC. | § | MAGISTRATE JANIS VAN MEERVELD *Jury Trial Requested* |

## <u>INITIAL DISCLOSURES</u>

NOW INTO COURT, by and through undersigned counsel, comes Plaintiff, Jewell Ratliff, who respectfully submits the following disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

**A. The name, and if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.**

    a.  Jewell Ratliff;

    b.  Captain Jarrett Young;

    c.  Mate Tyler Arabi;

    d.  Plaintiffs' medical providers related to and treating since the incident, including representatives, doctors, nurses, and other personnel at:

        i.  Pelican State Outpatient Center;

        ii.  Dr Lisa Hawk;

        iii.  Othopaedic Associates of New Orleans;

        iv.  Dr. Douglas Lurie;



    v. Moreau Physical Therapy;

   vi. Diagnostic Imaging Services;

   vii. Dr. Louis Schruff;

  e. A representative of Marquette Transportation Company Gulf-Inland, LLC;

  f. Marquette Transportation Company Gulf-Inland, LLC employee(s) responsible

   for the hiring, training, and/or supervision of Captain Jarrett Young.

**B. Copies, or descriptions of, non-privileged documents currently in the possession of**

 **Plaintiff relevant to disputed facts in this case are provided or described as follows:**

  a. Medical Records of Plaintiff, Previously Produced;

  b. Documents Identified and Produced by Defendant as part of its Initial

   Disclosures, Including:

    i. M/V ST ELMO Accident Report;

    ii. Personnel File of Jewell Ratliff;

   iii. Federal Drug Testing Custody and Control Form;

   iv. U.S. Dept. of Transportation Alcohol Testing Form.

**C. A computation of any category of damages:**

A calculation of Plaintiff's damages is premature as Plaintiff has not reached maximum medical improvement and does not yet know the full extent of his injuries, recovery, and/or disabilities. Plaintiff's damages include past and future loss of wages and benefits, impairment of future earning capacity, physical pain and suffering, mental and emotional pain and suffering, past and future medical expenses, permanent disability, loss of enjoyment of life, maintenance and cure, found, punitive damages, and/or any additional damages that may be shown at trial or to which Plaintiff is entitled.



**D.** **For inspection and copying as under Rule 34, any insurance agreement under which**

**any person carrying on an insurance business may be liable to satisfy part or all of a**

**judgment which may be entered in the action or to indemnify or reimburse for**

**payments made to satisfy the judgment:**

Defendant was solely at fault for this accident and insurance policies in its possession are

the only relevant policies in this cause of action.

Plaintiff reserves the right to amend and/or supplement these disclosures in accordance

with provisions allowed by law.

**WRIGHT, PICHON & GRAY, PLC**

*/s/Clinton G. Mead*
**Eric A. Wright**, LA Bar No. 26149
**Jeremy J. Pichon**, LA Bar No. 32218
**Daryl A. Gray**, LA Bar No. 34225
**David M. Abdullah**, LA Bar No. 27349
**Clinton G. Mead**, LA Bar No. 35244
**Loan H. Do**, LA Bar No. 37099
201 St. Charles Avenue, Suite 3206
New Orleans, LA 70170
Telephone: 504-500-0000
Facsimile: 504-324-0445
*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October, 2019, a copy of the foregoing pleading

was served upon each other party to this action by the Court's electronic delivery system, email,

facsimile, and/or depositing same in the United States Mails, properly addressed to his, her or its

counsel of record, first class postage prepaid.

/s/ Clinton G. Mead
CLINTON G. MEAD

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JEWELL RATLIFF | * | CIVIL ACTION NO. 2:19-CV-11299 |
| VERSUS | * | JUDGE BARRY W. ASHE |
| MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC | * | MAGISTRATE JUDGE JANIS VAN MEERVELD |

## PLAINTIFF'S WITNESS LIST

NOW INTO COURT, through undersigned counsel, comes plaintiff, JEWELL RATLIFF, who respectfully submits the following Witness List in accordance with this Honorable Court's Scheduling Order.

1)    Jewell Ratliff
      5046 St. Anthony, Apartment D
      New Orleans, Louisiana 70122
      Plaintiff will provide testimony regarding the alleged accident and injuries.

2)    Brianca May (Fiancée)
      5046 St. Anthony, Apartment D
      New Orleans, Louisiana 70122
      Ms. May will provide testimony regarding the alleged accident and injuries.

3)    Captain Jarrett Young
      4442 Bayview Drive
      Marrero, Louisiana
      Captain Young will provide testimony regarding the alleged accident.

4)    Mate Tyle Arabi
      48471 Fox Hollow Boulevard
      Hammond, Louisiana 70401
      Mate Arabi will provide testimony regarding the alleged accident.

5)    Brandon Harris
      1041 Burgess Drive
      Marrero, Louisiana 70072
      Mr. Harris will provide testimony regarding the alleged accident and his



investigation of same.

6) Ronnie Dupuy
 Claims & Risk Manager
 5525 Mames Street
 Jefferson, Louisiana 70183
 Mr. Dupuy will provide testimony regarding the alleged accident.

7) Wayne Guste
 204 East Queensbury Drive
 Slidell, Louisiana 70461
 Mr. Guste will provide testimony regarding the alleged accident.

8) Fred Budwin
 211 Christine Court
 Covington, Louisiana 70433
 Mr. Budwin will provide testimony regarding his damage survey of the M/V St.
 Elmo and MTC 802.   He will further testify regarding any reports, photographs,
 and correspondence regarding the subject incident.

9) Investigator with Genesis Information Services, Inc.
 9029 Jefferson Highway, Suite D-109
 New Orleans, Louisiana 70123
 He will further testify regarding any reports, photographs, and correspondence
 regarding the surveillance of Jewell Ratliff.

10) Dr. Douglas Lurie
 Orthopaedic Associates of New Orleans
 3434 Prytania Street, Suite 430
 New Orleans, LA 70115
 Dr. Lurie will testify as to the injuries suffered by plaintiff, as well as any and all
 past, present, and future medical treatment, medical restrictions and/or limitations.
 These are the precise areas identified in Plaintiff's Initial Disclosures and will be
 based upon medical evaluations, medical treatment, and medical notes of Dr. Lurie.
 Again, this opinion is based upon his medical evaluation and medical treatment.

11) Dr. Lisa Hawk
 Pelican State Outpatient Center
 1525 Dickory Ave.
 Harahan, La 70123
 Dr. Hawk is disclosed as an expert in the field of general medicine and will testify
 as identified in Plaintiff's Initial Disclosures, to the injuries suffered by plaintiff, as
 well as any and all medical treatment, past, present, and future medical restrictions
 and/or limitations. Additionally, Dr. Hawk will offer opinions consistent with those

2

contained within her medical notes and medical evaluation, including causation.

12)   Dr. Louis Schruff and Dr. Arthur Satterlee
      Diagnostic Imaging Services
      4221 Veterans Memorial Blvd., Suite 200
      Metairie, LA 70006
      Dr. Schruff and Dr. Satterlee with Diagnostic Imaging Services is disclosed as
      experts in the field of radiology and will testify as identified in Plaintiff's Initial
      Disclosures, to the injuries suffered by plaintiff.

13)   Moreau Physical Therapy
      Therapist: Cheryl Spencer, Althea Jones, and Wesley Juneau
      9330 Lake Forest Blvd, Suite A
      New Orleans, LA 70127
      Moreau Physical Therapy is disclosed as experts in the field of physical therapy
      and will testify as identified in Plaintiff's Initial Disclosures, to the injuries suffered
      by plaintiff.  Further, they will testify regarding the physical therapy provided,
      their objective findings and medical evaluations and medical notes.

14)   Dr. Walter Ellis
      Causeway Interventional Medicine, LLC
      3749 N. Causeway Blvd., Suite B
      Metairie, LA 70002
      Dr. Ellis is disclosed as an expert in the field of interventional medicine and will
      testify to the injuries suffered by plaintiff, as well as any and all medical treatment,
      past, present, and future medical restrictions and/or limitations. Additionally, Dr.
      Ellis will offer opinions consistent with those contained within his medical notes
      and medical evaluation, including causation.

15)   Dr. Joseph M. Zavatsky
      Spine & Scoliosis Specialists
      3535 Severn Ave, Suite 8
      Metairie, LA 70002
      Dr. Zavatsky is disclosed as an expert in the field of orthopedic medicine and will
      testify to the injuries suffered by plaintiff, as well as any and all medical treatment,
      past, present, and future medical restrictions and/or limitations. Additionally, Dr.
      Zavatsky will offer opinions consistent with those contained within his medical
      notes and medical evaluation, including causation.

16)   Stephanie Chalfin
      Life Care Planner and/or Voc Rehab
      Stephanie Chalfin is disclosed as an expert in the field of vocational rehabilitation
      and life care planning and will testify to her vocational assessment and her life care
      plan associated with the damages suffered by plaintiff, as well as any and all

3

medical expenses, past, present, and future cost of medical treatment. Additionally, Ms. Chalfin will offer opinions consistent with those contained within her report.

17)    Dr. Randoph Rice
       Economist
       Dr. Rice is disclosed as an expert in the field of economics and will testify to the economic damages suffered by plaintiff, as well as any and all medical expenses, past, present, and future cost of medical treatment. Additionally, Dr. Rice will offer opinions consistent with those contained within his report.

18)    Representative of Bollinger Shipyard
       615 Destrehan Avenue
       Harvey, Louisiana 70059
       The representative will provide testimony regarding the damages/repairs to the *M/V St. Elmo*.

19)    A representative for any and all insurance policies covering the M/V St. Elmo and/or written to cover Marquette Transportation Company Gulf-Inland

20)    Any and all other witnesses which may be called by any other party.

21)    Any rebuttal witnesses necessary.

Plaintiff, JEWELL RATLIFF, reserves his right to supplement his witness list as necessary as the identities of additional witnesses becomes known, and as discovery is ongoing, all in accordance with this Court's Scheduling Order.

Respectfully submitted:


BY: */s/ Jacob H. Hargett*
    JASON M. WELBORN (#26548)
    JACOB H. HARGETT (#32490)
    WELBORN & HARGETT, LLC
    1540 W. Pinhook Road
    Lafayette, LA 70503
    Telephone: (337) 234-5533
    Facsimile: (337) 769-3173
    Attorneys for Plaintiff,
    JEWELL RATLIFF

4

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was sent to all counsel of record via electronic filing through the CM/ECF system on the 11th day of May, 2021. Copies to any counsel not listed on the Court's CM/ECF system have been sent via U.S. first class mail, postage pre-paid and properly addressed.

*/s/Jacob H. Hargett*
Jacob H. Hargett



# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**JEWELL RATLIFF**                                    **CIVIL ACTION: 2:19-CV-11299**

**V.**                                                **JUDGE: BARRY W. ASHE**

**MARQUETTE TRANSPORTATION**                          **MAGISTRATE:**
**COMPANY GULF-INLAND, LLC.**                         **JANIS VAN MEERVELD**

### JEWELL RATLIFF'S RESPONSES TO MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC'S FIRST SET OF INTERROGATORIES

NOW INTO COURT, through undersigned counsel, comes Jewell Ratliff who provides responses to Marquette Transportation Company Gulf-Inland, LLC's First Set of Interrogatories as follows:

**INTERROGATORY NO. 1:**

Please identify your full name, your address(es) during the last ten (10) years, the identity of anyone who has shared those addresses (whether family member or otherwise), your Social Security number, your driver's license number, your TWIC card number, your date and place of birth, and your phone numbers for the past ten years.

RESPONSE TO INTERROGATORY NO. 1:

Objection. Plaintiff respectfully objects to this interrogatory on the grounds that it is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and without waiving the same, Plaintiff responds as follows:

Name:       Jewell Ratliff

Address(es):  4845 Good Drive, New Orleans, La 70127

            6118 Dreux Ave, New Orleans, La 70126

SSN:        

DOB:        



POB:        New Orleans, Louisiana

TWIC Card No.: 17640729

**INTERROGATORY NO. 2:**

Please identify: Each person to whom you are, or have been previously married to, the children by said person, if any, and where applicable, state the date of termination, dissolution or annulment of each prior marriage, and the court and docket number of same.

RESPONSE TO INTERROGATORY NO. 2:

Objection. Plaintiff respectfully objects to this interrogatory on the grounds that it is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and without waiving the same, Plaintiff responds as follows:

Plaintiff has never been married.

**INTERROGATORY NO. 3:**

Please describe as fully and as specifically as you can, all of the facts and circumstances of the alleged occurrence(s), including the time and date of the accident and where it occurred, and including each act or movement on your part or on the part of anyone in the vicinity immediately prior to, and during the happening of the alleged occurrence, including exactly what happened to cause your alleged injury.

RESPONSE TO INTERROGATORY NO. 3:

Please refer to the "Vessel Accident/Incident Report."



**INTERROGATORY NO. 4:**

Identify each individual who was working with you, or in the same area as you were, at the time of your alleged occurrence(s), indicate the specific area where each was, and state exactly what activity each was engaged in at the time of your alleged occurrence.

RESPONSE TO INTERROGATORY NO. 4:

At the time of the incident, there were only three (3) individuals on the vessel, including defendant. Tyler Arabi and Jared (unknown last name). Jarrett Young was driving the vessel and Tyler was a dockhand. Plaintiff is unaware of their exact activity and location at the time of the incident.

**INTERROGATORY NO. 5:**

Please state the exact time and date, and to whom, you first reported your alleged occurrence(s) and/or injury or injuries and state the substance of that report.

RESPONSE TO INTERROGATORY NO. 5:

Please refer to the "Vessel Accident/Incident Report."

**INTERROGATORY NO. 6:**

Please identify every person known to you or reasonably believed by you to have been an eyewitness to your alleged occurrence(s), or who may have first hand knowledge concerning the facts and circumstances of your accident or injuries, even if not an eyewitness to the occurrence(s).

RESPONSE TO INTERROGATORY NO. 6:

Jarrett Young and Tyler Arabi.

**INTERROGATORY NO. 7:**

Please identify every person from whom you or anyone acting on your behalf obtained written or recorded statements regarding the alleged occurrence(s) at issue, and please indicate the date(s) on which the statements were taken, the name and address of the person(s) taking the statements, and the name and address of the person(s) presently in possession of the statements.

RESPONSE TO INTERROGATORY NO. 7:

Plaintiff is unaware of any written or recorded statements regarding the incident at issue being taken. Plaintiff reserves the right to supplement and amend his response.

**INTERROGATORY NO. 8:**

Please identify each person you or anyone acting on your behalf interviewed, and/or questioned regarding the alleged occurrence(s) at issue, and from whom no recorded or written statement was obtained, and indicate the date(s) the interview or questioning took place and the name(s) of the person(s) conducting the interview or questioning.

RESPONSE TO INTERROGATORY NO. 8:

Plaintiff is unaware of any interviews being taken regarding this incident.

**INTERROGATORY NO. 9:**

In as much as you have alleged in your Petition that Marquette Transportation Company Gulf-Inland, LLC as the owners/operators of the M/V ST. ELMO was unseaworthy, and/or that your injuries resulted from the negligence of Defendant, please state and describe each separate act or item of negligence, condition of unseaworthiness and/or breach of duty which you contend caused your alleged accident. With regard to these allegations, please state precisely what you contend Marquette did wrong to cause or contribute to your accident, including but not limited to:

(a)    All facts which you contend form the basis for these allegations;

(b)    The name and address of each person known to you or reasonably believed by you to possess information that would substantiate or contradict these allegations;

(c)    The name and address of any expert witness consulted by you, your attorney or representative whose testimony could substantiate or contradict these allegations; and

(d)    The identity, contents and custodian of each document, diagram, record, memorandum or other writing known to you or reasonably believed by you to contain information which would substantiate or contradict these allegations.

RESPONSE TO INTERROGATORY NO. 9:

Objection. Plaintiff objects to this interrogatory on the grounds that it is overly broad, premature, and seeks information that was obtained and prepared in anticipation of litigation. Additionally, Plaintiff is not required at this stage of the proceedings to set forth in each specific act of negligence. Plaintiff responds that the vessel driver's negligence and failure to see what he should have seen, i.e. the barge, caused him to sustain severe injuries, including but not limited to a 12mm and 14mm herniated discs.

**INTERROGATORY NO. 10:**

Please identify and fully describe and specify each and every exhibit or other document or demonstrative aid which you intend to introduce and/or make use of during the trial.




RESPONSE TO INTERROGATORY NO. 10:

Objection. Plaintiff objects to this interrogatory on the grounds that it is premature. Without waiving said objection, plaintiff responds that he does not yet know which exhibits, documents or demonstrative aids he will use at trial. Discovery has only recently commenced and Plaintiff reserves the right to supplement and amend the answer to this interrogatory.

**INTERROGATORY NO. 11:**

Please describe fully and state in specific detail the injury or injuries you contend you suffered as a result of the occurrence. For each injury, please state whether you have ever suffered a prior or subsequent injury or re-injury aggravation to that part of your body and identify all health care providers you have ever seen, whether before or after the occurrence, for injuries to the same general vicinity of your body. For example, if you claim you injured your back, please identify any prior injuries to your back and all health care providers you ever saw for treatment of your back at any time.

RESPONSE TO INTERROGATORY NO. 11:

Objection. Plaintiff objects to this request in which he is asked to state the nature of his injuries. Louisiana jurisprudence has ruled that plaintiffs are not required to express medical opinions. Additionally, plaintiff is not an expert in medical matters. Subject to this objection and without waiving the same, Plaintiff responds as follows:

As a result of this accident, Plaintiff injured his lumbar spine. To the best of his knowledge, he never suffered a prior or subsequent injury to this part of his body. Since this incident Plaintiff has treated with the following medical providers:

Moreau Physical Therapy
2633 Napolean Ave
Suite 615
New Orleans, La 70115

Dr. Douglas Lurie, MD
Orthopaedic Associates of New Orleans
3434 Prytania Street
Suite 430
New Orleans, La 70115

Dr. Walter Ellis, MD
Causeway Interventional Medicine
3749 N. Causeway Blvd.
Suite B
Metairie, La 70002


Dr. Louis M. Schruff, MD
Diagnostic Imaging Services
4241 Veterans Blvd.
Suite 100
Metairie, La 70005

**INTERROGATORY NO. 12:**

Please identify any expert witness consulted by you with respect to any of the issues in this case, and for each expert, identify the following:

      (a)    A complete statement of all opinions to be expressed and the basis and reasons therefore;

      (b)    The data (including tests, test results, inspections, documents reviewed, etc.) or other information considered by the witness in formulating the opinions;

      (c)    Any exhibits to be used as a summary of or support for the opinions;

      (d)    The qualifications of the witness including a list of all publications authored by the witness within the preceding ten years;

      (e)    The compensation paid or to be paid to the witness or on his behalf for the study and testimony; and,

      (f)    A listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

RESPONSE TO INTERROGATORY NO. 12:

Plaintiff has not consulted with any expert witnesses regarding any issues in this case.

**INTERROGATORY NO. 13:**

As to the past medical treatment received by you that you contend is related to the occurrence:

        (a)    Identify each physician, chiropractor, therapist or other health care provider who has treated you, and/or who is presently treating you and each hospital, medical clinic, or other facility where you have been treated for any of the injuries allegedly suffered by you in the accident referred to in your Complaint/Petition, and identify the injuries being treated by each respective healthcare provider. Itemize and state the amount of all fees, charges, and/or expenses for each healthcare provider, or hospital or facility paid by you for which you have not been reimbursed.

        (b)    The reason for seeking such treatment, and how you identified the physician or facility, including the source for such a referral.

        (c)    Whether you are still under the care of that person or facility, or where applicable, when you were released from his or her care.

RESPONSE TO INTERROGATORY NO. 13:

Objection. Plaintiff objects to this interrogatory on the grounds that it is overly broad and requests privilege information, specifically subpart (b). Subject to and without waiving his objection Plaintiff responds that he has treat and/or is currently treating with the following medical providers:

Moreau Physical Therapy
2633 Napolean Ave
Suite 615
New Orleans, La 70115

Dr. Douglas Lurie, MD
Orthopaedic Associates of New Orleans
3434 Prytania Street
Suite 430
New Orleans, La 70115

Dr. Walter Ellis, MD
Causeway Interventional Medicine
3749 N. Causeway Blvd.
Suite B
Metairie, La 70002

Dr. Louis M. Schruff, MD





Diagnostic Imaging Services
4241 Veterans Blvd.
Suite 100
Metairie, La 70005

**INTERROGATORY NO. 14:**

Other than the treatment that you contend is related to the occurrence, please identify each doctor, physician, surgeon, chiropractor, psychiatrist, psychologist, counselor, dentist, orthodontist, periodontist, oral surgeon, osteopath, hospital, clinic, emergency room or other health care provider who has examined you or treated you at any time in your life, whether before or after the occurrence. With respect to each such person, please state the following:

(a)    The date or dates of each examination;

(b)    The reason for each examination (i.e., nature of illness or injury);

(c)    A complete description of all treatment rendered, including a description of all x-rays, MRIs and other tests performed;

(d)    Whether you are still under the care of that person, or, if applicable, when you were released from his or her care;

(e)    A description of the diagnosis and prognosis provided by each person listed above, describing, in detail, any future surgery or testing recommended by that person; and stating the dates or anticipated approximate dates of each surgery or test;

(f)    Any medication prescribed; and

(g)    A description of any physical therapy, or orthopedic or orthodontic appliances prescribed.

RESPONSE TO INTERROGATORY NO. 14:

Objection. Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information.

**INTERROGATORY NO. 15:**

Do you contend that additional medical care will be necessary in the future? If so, state the approximate amount of expense anticipated and identify each physician or other expert who predicted the necessity of such future medical care. In connection with this interrogatory, identify all documents, witnesses and other evidence upon which you will rely to support your claim for damages.

RESPONSE TO INTERROGATORY NO. 15:

Objection. Plaintiff objects to this request in which he is asked to state the nature of his injuries. Louisiana jurisprudence has ruled that plaintiffs are not required to express medical opinions. Additionally, plaintiff is not an expert in medical matters. Subject to this objection and without waiving the same, Plaintiff responds as follows:

Plaintiff contends that it is more likely than not that additional medical care will be necessary in the future due to the fact that he is currently treating and accruing additional medical expenses.

**INTERROGATORY NO. 16:**

Describe with particularity the source, amount and method of computing any past or future wages and/or profits which you allege to have lost as a result of the accident referred to in your Complaint. In connection with this interrogatory, identify all documents, witnesses and other evidence upon which you will rely to support your claim for damages.

RESPONSE TO INTERROGATORY NO. 16:

Objection. Plaintiff objects to this interrogatory on the ground that it is premature. Subject to this objection, and without waiving it, plaintiff responds that he has not yet consulted an economist, and thus has not yet calculated his past and future loss wages. Plaintiff reserves the right to supplement and amend this response once he consults an expert.

**INTERROGATORY NO. 17:**

Please state whether you have sought employment and/or have been employed by anyone since the date of your alleged occurrence, including self-employment, as well as whether you have received income from any source. If so, please state:

(a)    The name and address of each employer or source of income;

(b)    The positions held and the nature of the work performed, and dates of work or employment;

(c)    Hours worked per week;

(d)    Weekly wages, earnings, income or profit;

(e)    Name of immediate boss, foreman or other supervisor to whom you are responsible;

(f)    Whether a physical examination was required, and if so, state the date, place and person giving the examination; and

(g)    For each employer, state whether or not you made any representation in writing or answered in writing any questions concerning your physical condition.

RESPONSE TO INTERROGATORY NO. 17:

Objection. Plaintiff objects to this interrogatory on the ground that it is overly broad and vague. Subject to this objection, and without waiving it, plaintiff responds that he is currently employed by his alma mater, McDonough 35 Senior High School as an assistant football coach. He has not sought employment similar to the position he had in the instant case, because of the injuries he sustained during the incident.

**INTERROGATORY NO. 18:**

If you have ever applied for, or received any unemployment insurance benefits or unemployment disability compensation from any source, or Social Security benefits, please advise of the dates of the applications, the nature of the benefits received, if any, and the amounts and duration of said benefits.

RESPONSE TO INTERROGATORY NO. 18:

Page **11** of **16**



To the best of Plaintiff's the only unemployment insurance or disability benefits he has ever applied for and received is the disability compensation he is currently receiving from Marquette Transportation, LLC as a result of the subject incident.

**INTERROGATORY NO. 19:**

Identify any industry standards, regulation, guideline or recommended practice that you contend Marquette violated in connection with the occurrence. In connection with your answer, please specify who violated the standard and how, and what could have been done differently to (1) comply with the standard, or (2) avoid the occurrence.

RESPONSE TO INTERROGATORY NO. 19:

Objection. Plaintiff objects to this interrogatory on the grounds that it is overly broad and premature. Discovery investigation is in the early stages, and Plaintiff is not required at this stage of the proceedings to set forth in each specific standard or guideline that may have been violated by Marquette.

**INTERROGATORY NO. 20:**

Please identify each additional witness, besides experts, who you "may call" or "will call" to testify on your behalf at the trial. With respect to each witness, state:

    (a)    Whether you "will call" or "may call" him/her to testify on your behalf at the trial;

    (b)    Whether you intend to call him/her under direct examination or cross-examination;

    (c)    Whether you intend to qualify him/her as an expert and in what field of expertise;

    (d)    Whether he/she will testify on the issue of liability and/or damages;

    (e)    The general nature of the anticipated testimony of that witness;

    (f)    Whether he/she has given a written or recorded statement, and, if so, in whose possession the statement is located; and,

    (g)    His/her employer at the time of occurrence, including in your answer the current address and current telephone number of his/her employer and the immediate supervisor.



RESPONSE TO INTERROGATORY NO. 20:

Objection. Plaintiff objects to this interrogatory on the ground that it is premature. Without waiving said objection, plaintiff responds that he does not yet know what witnesses he will or may call at trial. Subject to and without waiving this objection Plaintiff responds that he may call Jarrett Young and/or Tyler Arabi to the witness stand at trial.

**INTERROGATORY NO. 21:**

Identify all of your previous employers and include in your response the employer's address, the dates of employment, your job title, your rate of pay, your immediate supervisor and your reason for leaving, and whether or not you had any accidents while employed.

RESPONSE TO INTERROGATORY NO. 21:

Objection. Plaintiff object to this interrogatory on the grounds that it is overly broad and vague. Subject to this objection and without waiving the same, Plaintiff responds that he was previously employed with New Orleans Louisiana Saints, LLC.

**INTERROGATORY NO. 22:**

If you have even been involved in any other accidents or incidents, please state when, how the accident occurred, by whom you were employed at the time, where the accident occurred and whether you were injured in any way as a result. Please included specifies reference to any body part you claim to injured as a result of the occurrence.

RESPONSE TO INTERROGATORY NO. 22:

Objection. Plaintiff objects to this interrogatory on the ground that it is overly broad. Subject to and without waiving said objection, plaintiff responds that to the best of his knowledge he was not involved in any accidents or incidents prior to the incident made the subject of this lawsuit.



**INTERROGATORY NO. 23:**

Please state whether you have ever participated or have been involved in a lawsuit, filed any other lawsuit or made any claims against any insurer of any kind, including worker's compensation claims, disability insurance claims, etc., prior to this captioned matter. If so, please state:

(a)    Whether you were involved as the plaintiff or defendant;

(b)    The style of the case/suit, if any, together with the jurisdiction in which suit was filed;

(c)    The nature of the claim;

(d)    How the claim was resolved (e.g., settlement, judgment, voluntary dismissal, etc.);

(e)    The amount of the recovery, if any;

(f)    Whether you claimed any disability, whether temporary or permanent; and

(g)    The name, last known address, etc. of the party against whom the claim was made.

**RESPONSE TO INTERROGATORY NO. 23:**

Objection. Plaintiff objects to the interrogatory on grounds that it is overly broad, vague, and seeks information that is publicly available or equally available to the defendants from sources other than Plaintiff. Subject to and without waiving the objection, plaintiff responds that to the best of his knowledge he has not been involved in any lawsuits prior to the subject lawsuit.

**INTERROGATORY NO. 24:**

Have you ever been arrested for a misdemeanor or a felony crime as an adult? If so, please state the date and location of the arrest and state whether or not the arrest led to a conviction.

**RESPONSE TO INTERROGATORY NO. 24:**

Objection. Plaintiff objects to this interrogatory on the basis that it is irrelevant and overly broad. The Federal Rules of Evidence provides that evidence concerning a criminal conviction in a civil case cannot be introduced into evidence unless the crime was punishable by death or imprisonment in excess of one (1) year, or the Court can readily determine that an element of the crime required some dishonest act or false statement. Subject to this objection and without

waiving the same, Plaintiff responds that he has never been convicted of any felony or misdemeanor.


**INTERROGATORY NO. 25:**

How many times a week do you teach or coach football?  If so, please answer

the following:

(a)    Are you a member of the faculty or are you retained by the school

as a part-time coach?

(b)    If you are a member of the faculty, is your paycheck automatically

deposited into your bank account?

(c)    If you are employed on a part-time basis, how to you receive

payment for  your coaching services?


RESPONSE TO INTERROGATORY NO. 25:

Objection. Plaintiff objects to this interrogatory on the ground that it is completely irrelevant. Subject to and without waiving the objection, Plaintiff responds as follows:

Plaintiff coaches football at McDonough 35 Senior High School, during the football season August 2019 through December 2019, Monday through Friday during the afternoon.

(a) Part-time Assistant Football Coach
(b) N/A
(c) N/A

**CERTIFICATE OF SERVICE**

I CERTIFY THAT A COPY OF THE FOREGOING PLEADING HAS BEEN SERVED UPON COUNSEL FOR ALL PARTIES BY ( ) MAILING, ( ) CERTIFIED MAILING, ( ) FAXING, OR ( ) E-MAILING THE SAME TO EACH, PROPERLY ADDRESSED AND ON THIS 3rd DAY OF **December**, 2019.

*Charity Bruce*

Charity N. Bruce

Respectfully submitted:

**WRIGHT, PICHON & GRAY, PLC**

*Charity Bruce*

Eric A. Wright, LA Bar No. 26149
Jeremy J. Pichon, LA Bar No. 32218
Daryl A. Gray, LA Bar No. 34225
Raynique T. Keelen, LA Bar No. 31216
Pamela V. Hansen, LA Bar No. 20398
Charity N. Bruce, LA Bar No. 37611
Brandon A. Brisco, LA Bar No. 36156
Michael St. Romain, LA Bar No. 37883
201 St. Charles Avenue, Suite 3206

New Orleans, LA 70170
Telephone: 504-500-0000
Facsimile: 504-324-0445
***ATTORNEYS FOR PLAINTIFF***

### UNITED STATE DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

JEWELL RATLIFF        *    CIVIL ACTION NO. 2:19-CV-11299

VERSUS              *    JUDGE BARRY W. ASHE

MARQUETTE TRANSPORTATION *    MAGISTRATE JANIS VAN MEERVELD
COMPANY GULF-INLAND, LLC

====================================================

### PLAINTIFF'S RULE 26(A)(2)(C) DISCLOSURES

====================================================

       As identified in Plaintiff's Initial Disclosures provided to defense counsel on October 01,

2019, plaintiff reiterates the following areas of expert testimony upon which plaintiff's treating

physicians will offer testimony:

      a)       Dr. Douglas Lurie
             Orthopaedic Associates of New Orleans
             3434 Prytania Street, Suite 430
             New Orleans, LA 70115

             Dr. Lurie will testify as to the injuries suffered by plaintiff, as well as any and all
             past, present, and future medical treatment, medical restrictions and/or limitations.
             These are the precise areas identified in Plaintiff's Initial Disclosures and will be
             based upon medical evaluations, medical treatment, and medical notes of Dr. Lurie.
             Additionally, as identified in Dr. Muldowny's initial office visit with Jeremy Farris,
             he opines that Jeremy Farris' current symptoms are "lumbar radiculopathy". Again,
             this opinion is based upon his medical evaluation and medical treatment.

      b)       Dr. Lisa Hawk
             Pelican State Outpatient Center
             1525 Dickory Ave.
             Harahan, La 70123



Dr. Hawk is disclosed as an expert in the field of general medicine and will testify as identified in Plaintiff's Initial Disclosures, to the injuries suffered by plaintiff, as well as any and all medical treatment, past, present, and future medical restrictions and/or limitations. Additionally, Dr. Hawk will offer opinions consistent with those contained within her medical notes and medical evaluation, including causation.

c)     Dr. Louis Schruff and Dr. Arthur Satterlee
       Diagnostic Imaging Services
       4221 Veterans Memorial Blvd., Suite 200
       Metairie, LA 70006

       Dr. Schruff and Dr. Satterlee with Diagnostic Imaging Services is disclosed as experts in the field of radiology and will testify as identified in Plaintiff's Initial Disclosures, to the injuries suffered by plaintiff.

d)     Moreau Physical Therapy
       Therapist: Cheryl Spencer, Althea Jones, and Wesley Juneau
       9330 Lake Forest Blvd, Suite A
       New Orleans, LA 70127

       Moreau Physical Therapy is disclosed as experts in the field of radiology and will testify as identified in Plaintiff's Initial Disclosures, to the injuries suffered by plaintiff.

e)     Dr. Walter Ellis
       Causeway Interventional Medicine, LLC
       3749 N. Causeway Blvd., Suite B
       Metairie, LA 70002

       Dr. Ellis is disclosed as an expert in the field of interventional medicine and will testify to the injuries suffered by plaintiff, as well as any and all medical treatment, past, present, and future medical restrictions and/or limitations. Additionally, Dr. Ellis will offer opinions consistent with those contained within his medical notes and medical evaluation, including causation.

f)     Dr. Joseph M. Zavatsky
       3535 Severn Ave, Suite 8
       Metairie, LA 70002

       Dr. Zavatsky is disclosed as an expert in the field of orthopedic medicine and will testify to the injuries suffered by plaintiff, as well as any and all medical treatment, past, present, and future medical restrictions and/or limitations. Additionally, Dr. Zavatsky will offer opinions consistent with those contained within his medical notes

and medical evaluation, including causation.

g)    Stephanie Chalfin
      Life Care Planner and/or Voc Rehab

      Stephanie Chalfin is disclosed as an expert in the field of vocational rehabilitation
      and life care planning and will testify to her vocational assessment and her life care
      plan associated with the damages suffered by plaintiff, as well as any and all medical
      expenses, past, present, and future cost of medical treatment. Additionally, Ms.
      Chalfin will offer opinions consistent with those contained within her report.

h)    Dr. Randoph Rice
      Ecomonist

      Dr. Rice is disclosed as an expert in the field of economics and will testify to the
      economic damages suffered by plaintiff, as well as any and all medical expenses,
      past, present, and future cost of medical treatment. Additionally, Dr. Rice will offer
      opinions consistent with those contained within his report.

Plaintiff reserves his right to amend and/or supplement the above as more information

becomes available.

                              Respectfully submitted:

                              GAAR LAW FIRM


                        BY: */s/ Jacob Hargett*
                              JOSEPH F. GAAR, JR. (#16927)
                              JASON M. WELBORN (#26548)
                              LUCAS S. COLLIGAN (#31671)
                              JACOB H. HARGETT (#32490)
                              114 Representative Row
                              Lafayette, LA 70508
                              Telephone: (337) 233-3185
                              Fax: (337) 233-0690
                              ATTORNEYS FOR PLAINTIFF,
                              Jewel Ratliff

3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify a copy of the foregoing pleading has been served on all counsel of record electronic mail and/or by placing same in the U. S. Mail, postage prepaid this 2nd day of November, 2020.

/s/ *Jacob H. Hargett*
JACOB H. HARGETT

4

**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JEWELL RATLIFF** | \* | **CIVIL ACTION NO. 2:19-CV-11299** |
| **VERSUS** | \* | **JUDGE BARRY W. ASHE** |
| **MARQUETTE TRANSPORTATION** | \* | **MAGISTRATE JANIS VAN MEERVELD** |
| **COMPANY GULF-INLAND, LLC** | | |

**PLAINTIFF'S SECOND SUPPLEMENTAL RULE 26(A)(2)(C) DISCLOSURES**

NOW INTO COURT, through undersigned counsel, comes plaintiff, JEWELL RATLIFF, who provides the following second supplemental Rule 26 (A)(2)(C) designations for his treating physicians and healthcare providers:

1. Dr. Douglas Lurie
   Orthopaedic Associates of New Orleans
   3434 Prytania Street, Suite 430
   New Orleans, LA 70115

   Dr. Lurie is a board-certified orthopedic surgeon who specializes in treatment of general orthopedic disorders and who is one of treating physicians of Plaintiff, Jewell Ratliff. A copy of Dr. Lurie's CV has been provided to defense counsel and is incorporated by designation. A copy of Dr. Lurie's records from Orthopaedic Associates of New Orleans has been provided by production to all parties of record.

   Dr. Lurie may testify as to his opinions with a reasonable medical probability based upon his education, training, experience, as an orthopedic surgeon, research in his field, generally accepted medical principles, medical testing, and medical diagnostic criteria, all of which is used in orthopedic surgery and tested in clinical practice. Dr. Lurie may testify about the risk of medical treatment, the risk of the future surgery proposed on Mr. Ratliff, and the extent of informed consent obtained before surgeries in medical treatment. Dr. Lurie may testify about Mr. Ratliff's bodily injuries, the diagnosis in causation of those injuries from the May 30, 2019, the alternative to surgery, the use of medication for pain relief, using nonsurgical modalities like physical therapy, and steroid injections. His referral to other physicians, and the need for additional treatment at the time of his evaluation. Dr. Lurie may testify regarding the severity of Mr. Ratliff's injuries, Mr. Ratliff's future

1



medical care, and the history and causation of Mr. Ratliff's condition and injuries. Dr. Lurie may testify regarding the reasonableness of the medical treatment and expenses, the cost of future treatment, and whether there are alternatives to the future treatment that may improve Mr. Ratliff's condition. Dr. Lurie may testify regarding testing, findings, observations, diagnosis treatment and therapies involved in Mr. Ratliff's bodily injuries and the recommended surgeries that are reflected in Mr. Ratliff's medical records.

Orthopedic surgery is a specialized field of surgery for the treatment of diseases and conditions of the central nervous system, spine and muscular skeletal system. An orthopedic surgeon is a medical surgeon who has received training in the surgical and medical management of various neurological and sports medicine related diseases. The spinal cord and spinal column are an intricate network of nerves, discs, and bones. The spinal cord is an extension of the brain that carries impulses to and from the brain to the rest of the body. The spinal cord begins in the brain and is protected by a bony structure called the vertebral or spinal column. The spinal cord functions as a long communication and information pathway between the brain stem and the rest of the body.

A herniated disc is a fragment of the disc nucleus that is pushed out of the outer disc margin and into the spinal canal through a tear or rupture. In the herniated disc position, it presses on the spinal nerves, producing pain. An intact, soft flexible disc act as a shock absorber and also protects the spinal cord and separates each of the bone of vertebrae in the spine. The discs have a rigid outer rim, the annulus but also have a soft gel like inside. The cervical, thoracic and lumbar spine consist of vertebral bodies shaped like building blocks that are separated from one another by intervertebral disc that act as shock absorbers. Dr. Lurie may comment on some or all of the anatomy of Mr. Ratliff's spine, and the injuries to that spine. Dr. Lurie may testify as to whether the injuries constitute knew medical injuries given Mr. Ratliff's age, or constitute an aggravation of a pre-existing condition in Mr. Ratliff's spine. Dr. Lurie may testify as to the history provided, the injuries sustained, and the causal link between the trauma evident on radiological studies and the accident complained of. Dr. Lurie may talk about his recommendations to other medical care providers who provided more specialized treatment, including pain management, physical therapy, radiology, and treatment of spinal disorders. Dr. Lurie may testify as to the restrictions, limitations and future medical treatment required to address the conditions of Mr. Ratliff. Dr. Lurie could testify as to the acceleration of arthritic changes in the spine as a result of the injuries sustained. Dr. Lurie may opine regarding the impairment rating, and the obtainment of maximum medical improvement and time of recovery following spinal surgery.

2.    Dr. Joseph M. Zavatsky
3535 Severn Ave, Suite 8
Metairie, LA 70002

Dr. Zavatsky is a practicing neurosurgeon. He is licensed to practice in the State of
Louisiana, and is a treating physician of Jewell Ratliff. Dr. Zavatsky' s CV and
medical records have been obtained through HIPPA authorization and provided via
request for production of documents to the defense, in their entirety and by
certification. Dr. Zavatsky is spinal trained neurological surgeon.

Dr. Zavatsky may testify regarding his opinions within a reasonable medical
probability based upon his education, training, experiences in neurosurgeon,
research in the field of neurosurgery, and based upon generally accepted medical
principles. Dr. Zavatsky may offer opinion testimony regarding medical testing
conducted, medical diagnostic criteria used in neurosurgery, and tested in clinical
practice. Dr. Zavatsky may testify that the clinical method is widely accepted in
medicine, and it taught in medical school, and that he followed acceptive medical
protocols in diagnosing and treating Mr. Ratliff's bodily injuries. Dr. Zavatsky may
testify about the risk associated with medical treatment, and the surgery being
recommended and/or performed on Plaintiff, Jewell Ratliff.

Dr. Zavatsky may testify about Mr. Ratliff's bodily injuries, the diagnosis of the
injuries and the aggravation of any injuries caused or contributed to by the accident
issue. Dr. Zavatsky may talk about the surgery performed or recommended, the
alternative to surgery, the use of alternative medical procedures, including pain
medication, and non-surgical modalities like physical therapy and steroid
injections. Dr. Zavatsky will talk about the preparation for surgery, the additional
medical treatment following surgery, the procedures and instruments used in
surgery and the severity of Mr. Ratliff's injuries. Dr. Zavatsky may testify regarding
the history and causation of Mr. Ratliff's injuries, the reasonableness of medical
treatment and expense of same. Dr. Zavatsky may be asked to opine regarding the
alternative medical treatment that can improve Mr. Ratliff's condition, the facts,
testing, findings, aggravations, diagnosis, treatment, therapies, and prognosis
involved in Mr. Ratliff's bodily injuries and recommended treatment. All of these
recommended treatments and diagnostic criteria are contained within Mr. Ratliff's
medical records.

Dr. Zavatsky may testify as to the facts and opinions consistent with those disclosed
and provided by the other medical care providers, including the radiologist, pain
management physicians, and other treating physicians. Dr. Zavatsky will testify
about his diagnosis, and why his recommendation for surgery is warranted given
the diagnostic criteria accepted in the field of neurosurgery. Dr. Zavatsky will
testify regarding the failure of conservative treatment, including injections,
medication management, and physical therapy. Dr. Zavatsky will testify that Mr.

3

Ratliff sustained disc damage, and tears described in the radiological studies and that the accident caused his clinical syndrome and results in Mr. Ratliff's pain. Dr. Zavatsky will testify that Mr. Ratliff will now likely develop accelerated arthritis and accelerated facet joint disease that will impact his future healing. Dr. Zavatsky will testify that he has recommended a 2 level microdiscectomy as both reasonable and medically necessary treatment. Dr. Zavatsky will also be asked to opine regarding the anatomical impairment rating, restrictions and limitations, and course of future medical care. Dr. Zavatsky will be asked to testify regarding his opinions about medical causation, medical necessity, and reasonableness.

3.    Dr. Walter Ellis
Causeway Interventional Medicine, LLC
3749 N. Causeway Blvd., Suite B
Metairie, LA 70002

Dr. Ellis is an expert in the field of interventional medicine and will testify regarding the injuries suffered by Plaintiff as well as any and all medical treatment, past, present and future. Dr. Ellis is a treating physician, not retained or specially employed as an expert and is not required to prepare a written report. Dr. Ellis' curriculum vitae is incorporated by designation, showing his education, training, and experience in the field of interventional pain medicine. Dr. Ellis will be asked to testify based upon his opinions within a reasonable medical probability based on his education, training, experience in the field of interventional medicine, research in those fields, and based upon general accepted medical principles, medical test and medical diagnostic criteria.

Dr. Ellis may testify as to his opinions within a reasonable medical probability regarding the conditions suffered by Jewell Ratliff as a result of accident complained of. Dr. Ellis may testify regarding recommendations for interventional pain treatment, including the use of epidural steroid injections, facet injections, medial branch blocks, and/or radiofrequency ablation. Dr. Ellis may testify about Mr. Ratliff's bodily injuries, the diagnosis and causation of the injuries, the accident that caused the injuries, the alternatives to surgery, such as the use of pain medication and non-surgical modalities, like physical therapy and steroid injections, the risk of non-surgical options and the procedures and instruments used in the non-surgical options. Dr Ellis may testify as to the severity of Mr. Ratliff's injuries, the future medical care, the history and causation of Mr. Ratliff's condition and injuries, the reasonableness of the medical treatment and expenses for the injuries, the expense and cost of future medical treatment, whether there is alternatives to the medical treatment recommended by the various treating physicians, as well as the facts, matters, tests, findings, observations, treatment, therapies and prognosis involved in Mr. Ratliff's bodily injuries and recommended treatment. Dr. Ellis may testify regarding the anatomy of the spine, including the injuries sustained, the radiological report interpreted, and the objective and

subjective clinical findings in his examination of Jewell Ratliff.  Dr. Ellis may testify how cervical and lumbar trauma, affect the body and residual effects of Mr. Ratliff's injuries. Dr. Ellis may be asked to testify that the injuries were caused and contributed to by the accident at issue and will testify as to the general anatomy of the nervous system, similar to that identified for Dr. Lurie. Specifically, Dr. Ellis may testify that the accident or allision caused injuries to Jewell Ratliff, lumbar disc and clinical syndrome in Mr. Ratliff's spine. Dr. Ellis may testify regarding the clinical findings, observations, opinions, diagnosis and prognosis contained in the medical records and consistent with his medical evaluations.

4.    Dr. Louis Schruff and Dr. Arthur Satterlee
       Diagnostic Imaging Services
       4221 Veterans Memorial Blvd., Suite 200
       Metairie, LA 70006

These doctors are disclosed as evaluating physicians, who performed an evaluation, as part of the treatment team and analysis of Mr. Ratliff's injuries. Dr. Schruff and Dr. Satterlee, as well as Diagnostic Imaging Services were not retained or specially employees as expert, but rather, to evaluate the treatment and injuries suffered by Jewell Ratliff. These doctors curriculum vitae is incorporated by designation. Both doctors practice in the field of diagnostic radiology and are members of the American Board of Radiology or Radiological Medicine. Both doctors may testify regarding their opinions within a reasonable medical probability based upon their education, training, experience in the field of medicine, research in that field, and based upon general accepted medical principles, medical test and medical diagnostic criteria. Both doctors, as well as Diagnostic Imaging Services have provided certified copies of their medical records which were obtained through use of a HIPPA authorization, and have provided by designation, then provided by a production or designation to defense counsel, through certification. Both Doctors may testify regarding their opinions within a reasonable degree of medical probability based upon their education, training, and experience as radiologist, and based upon generally accepted medical principles, medical testing, and medical criteria, used in the practice of radiology. Both doctors will testify regarding their view of and reading of the images conducted in the regular course of treatment of Mr. Ratliff, and what findings were present on the radiological exams.

Plaintiff reserves his right to amend and/or supplement the above as more information becomes available.

Respectfully submitted:

BY: _/s/ Jacob H. Hargett_
    JASON M. WELBORN (#26548)
    JACOB H. HARGETT (#32490)
    WELBORN & HARGETT, LLC
    1540 W. Pinhook Road
    Lafayette, LA 70503
    Telephone: (337) 234-5533
    Facsimile: (337) 769-3173
    Attorneys for Plaintiff,
    JEWELL RATLIFF

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was sent to all counsel of record via electronic filing through the CM/ECF system on the 16th day of June, 2021. Copies to any counsel not listed on the Court's CM/ECF system have been sent via U.S. first class mail, postage pre-paid and properly addressed.

_/s/Jacob H. Hargett_
Jacob H. Hargett



**SEYLER FAVALORO Ltd**
REHABILITATION COUNSELING
LIFE CARE PLANNING

May 12, 2021

*Also via email (jgarner@slfirmus.com)*

John Garner
Scialdone Law Firm LLC
P.O. Box 4080
Gulfport, MS 39502

**RE:    JEWELL RATLIFF**
     Marquette Transportation

## VOCATIONAL REHABILITATION REPORT

*Introduction*

This case was received with a request for the completion of a vocational rehabilitation evaluation to assess the employability and expected earnings range of Jewell Ratliff. On May 3, 2021, a vocational rehabilitation evaluation was completed with Jewell Ratliff in our offices in New Orleans, Louisiana. The aforementioned interview was immediately followed by vocational testing during which time Jewell Ratliff was administered the *Wide Range Achievement Test-5, WRAT-5*. A disclosure statement was reviewed with and given to Jewell Ratliff. He understood that a client-counselor relationship was not established and that a report would be provided.

The opinions of this evaluation are based upon specific methodology that includes a vocational interview, vocational testing, transferable skills analysis, review of medical records and other pertinent file materials, utilization of governmental publications including the *Dictionary of Occupational Titles* and its supplements, as well as labor market research. File materials received and reviewed include the following:

- Deposition of Jewell Ratliff
- Medical Record of LCMC Urgent Care
- Records of Diagnostic Imaging Services
- Medical Records of Walter Ellis, MD
- Records of Moreau Physical Therapy
- Medical Records of J. Randall Ramsey, MD
- Medical Records of Douglas N. Lurie, Jr., MD
- Medical Records of Pelican State Outpatient Center
- Medical Records of Joseph M. Zavatsky, MD
- Medical Record of Damen L. Johnson, MD
- Tax Records
- Walgreen's Pharmacy

1615 POYDRAS STREET, SUITE 1040    (504) 524-3378 • FAX (504) 522-5633



EXHIBIT
F

May 12, 2021
John Garner
**RE:   JEWELL RATLIFF**
P a g e | **2**

- Report of Stephanie P. Chalfin, MS
- Records of Social Security Administration
- Report of G. Randolph Rice, PhD
- Records of Marquette Transportation

*Background Information*

Jewell Ratliff was born on ▓▓▓▓▓▓▓▓▓ in New Orleans, Louisiana. He lives in New Orleans today. Mr. Ratliff is single and told me that he lives with his girlfriend who is a hairdresser. He has two children. He has a one year old with his girlfriend who lives in the family home with them. He has a five year old who resides with his mother and that he sees on a regular basis. His girlfriend's son who is also 5 years old lives in their family home.

Mr. Ratliff reports no military service. He reports possession of a Louisiana driver's license with no restrictions. He told me that he does stretching exercises and drives on a regular basis.

He is currently receiving Maintenance benefits in the amount of $525.00 every two weeks.

When asked to describe his daily activities, Mr. Ratliff told me that he does stretches a lot, every morning and every evening. He reports numbness in his left leg. He told me that he coaches football at McDonogh 35. He usually goes there for four hours every day, Monday through Friday. They usually meet in the gym and go outside. He told me that he does stretches throughout the time that he is at school. Mr. Ratliff told me that he cannot bring in groceries, however, he does participate in some light household activities such as taking out the trash. He told me that he also does a lot of walking.

*Educational Information*

Jewell Ratliff graduated from McDonogh 35 High School in 2009. He attended the University of Kentucky for about three semesters and played football while he was there. He went to Holmes Junior College for a couple of months or maybe a year. He then went to Tuskegee University in 2015 and played football while he was there. He was studying sociology. He told me that he may go back to college through Tuskegee University, online. He would like to earn his degree.

Jewell Ratliff describes his computer familiarity as being able to search the internet and do email. He also uses his phone for those activities.

*Work History*

Jewell Ratliff told me that he had been employed by Marquette Transportation for about eight months in May 2019. He has not returned to any work since that time. He was employed as a deckhand on a tow boat that pushed barges. He told me that he worked in the Mississippi River and learned this job through on-the-job training. He did fleet work and became a senior deckhand. Mr. Ratliff usually worked a 14/7 day schedule and thinks that he was earning

May 12, 2021
John Garner
RE:   JEWELL RATLIFF
Page | 3

$190.00 or $200.00 a day. He has also done deckhand work for CCI out of Reserve, Louisiana. Mr. Ratliff held a Transportation Worker's Identification Credential (TWIC) card.

Other employment was through Crescent Foundation where he worked as a ground man. Mr. Ratliff told me that this was a pile driving company, and he dealt with the chains to assist the pile driver operation.

He has been employed as a behavioral interventionist at McDonogh 35. He worked a regular school day type schedule and worked for one school year. He told me that he worked with children who were serving in-school suspensions. When asked if he would like to return to that type of work, Mr. Ratliff explained to me that there was no structure at that school, and he does not think he could return to that type of work.

He has also worked as a valet parker at the Marriot Hotel and did janitorial work at the Audubon Nature Institute and could not remember what company had hired him.

*Medical Information*

Jewell Ratliff told me that he sees Joseph Zavatsky, MD once or twice a month and had an appointment for the week after our evaluation. We would of course like to review any additional medical information that may be forthcoming. He no longer sees Dr. Ellis or Dr. Lurie. Mr. Ratliff explained that Dr. Zavatsky had administered an injection to his lower back two months prior. He states that he "has his days". He told me that the injections do help and that the pain gradually returns. He told me that he can deal with pain. He has also undergone epidural steroid injections and radiofrequency ablations in his cervical spine and told me that condition has improved although it does still bother him. He is not in physical therapy. At this time, he told me that he does quite a few stretches and exercises throughout the day. He told me that he can bench-press up to 80 pounds and that prior to his injury, he could bench-press 340 pounds. He takes no prescription medication. He takes over-the-counter Tylenol and/or ibuprofen on a fairly regular basis.

A review of the medical file material notes an incident date of May 30, 2019. He went to Pelican State Outpatient Center on May 31, 2019. Their assessment was low back pain and melena. Lisa Hawk, MD reported that there was no abnormality and the x-ray of the lumbar spine was appreciated except for chronic spondylosis interiorly at L1-L2. She found Mr. Ratliff unable to work secondary to blood in his stool. She otherwise felt that he can do Light duty with his back pain.

Doug Lurie, Jr., MD saw Jewell Ratliff on June 4, 2019. He found Mr. Ratliff to be a 27 year old deckhand who complained of pain in his back. His impression was lumbar contusion with left lumbar radicular symptoms and left rib contusion. He prescribed medication and recommended an MRI. On June 14, 2019, Dr. Lurie reported that Mr. Ratliff was doing a little better. An MRI revealed disc protrusions at two levels in the lumbar spine. His impression was left lumbar radiculopathy. He described Mr. Ratliff's work status as basically Light duty. He was doing some coaching and Dr. Lurie said that Mr. Jewell explained that it was not anything physical.

May 12, 2021
John Garner
RE:   JEWELL RATLIFF
P a g e  | 4

Jewell Ratliff attended ten sessions of physical therapy at Moreau Physical Therapy.

On September 24, 2019, Dr. Lurie reported that he had not seen Mr. Jewell in a couple of months. He recommended moving forward with the lumbar epidural steroid injection on the left side and a left L5-S1 transforaminal epidural steroid injection or left S1 selective nerve root block.

Mr. Ratliff saw Walter Ellis, MD on December 10, 2019. Dr. Ellis' assessment was lumbar pain with the complaint of left toe numbness. He gave Mr. Ratliff a home exercise program concentrating on easy chair yoga.

On January 14, 2020, Walter Ellis, MD indicated that Mr. Ratliff continued to report left lower lumbar pain. He had reportedly been compliant with his exercise program and noted some improvement in his flexibility and endurance. Mr. Ratliff was taking over-the-counter medication. Dr. Ellis added Tylenol with Codeine to be taken at night to help Mr. Ratliff get better rest.

On February 25, 2020, Joseph Zavatsky, MD recommended bilateral transforaminal epidural steroid injections at L5-S1. He discussed those injections again on a telemedicine visit on April 27, 2020. Dr. Zavatsky requested an MRI of the cervical spine. He administered transforaminal epidural steroid injections at L5-S1 on the right and left. He then administered facet medial branch blocks in the cervical spine at three levels on July 30, 2020.

On September 22, 2020, Dr. Zavatsky reported that the cervical medial branch blocks continued to provide relief of his neck pain. They discussed further treatment of the lumbar spine including surgery. Dr. Zavatsky administered epidural steroid injections at L5-S1 again on October 6, 2020. On November 5, 2020, Dr. Zavatsky reported that over the last 1-2 months, Mr. Ratliff's neck pain had become significantly worse. He discussed repeating cervical radiofrequency ablations and prescribed Norco. Dr. Zavatsky did administer cervical radiofrequency ablations at three levels on November 5, 2020. He then administered epidural steroid injections to the lumbar spine on January 21, 2020.

We would of course like to review any additional medical information that may be forthcoming.

*Prior Medical Information*

Medical records note that Jewell Ratliff played football and in December 2010, he injured the first finger of his right hand. He then complained of left ankle pain in March 2011 when he was found to have sprained his left ankle.

The ankle remained swollen in October 2011. On October 12, 2011, James Ramsey, MD performed open reduction and internal fixation. He was non weight bearing for a period of time. He was walking in the boot in November 2011 and was transitioned out of the boot to a weight bearing program.

May 12, 2021
John Garner
**RE:  JEWELL RATLIFF**
P a g e | 5

On May 11, 2017, Mr. Ratliff signed a free agent waiver form with the New Orleans Saints. It was noted that he had a plate in his right ankle.

### *Vocational Testing*

As part of this assessment, three subtests of the *Wide Range Achievement Test-5, WRAT-5*, were administered to Jewell Ratliff.   The testing environment was appropriate for the examination.  His scores are as follows:

| SUBTEST NAME | STANDARD SCORE | GRADE EQUIVALENT |
|---|---|---|
| Word Reading | 79 | 6.1 |
| Passage Comprehension | 75 | 4.5 |
| Math Computation | 81 | 4.6 |

These scores reflect the ability of Mr. Ratliff to read and understand simple words and phrases.  He can perform the four basic operations of arithmetic with whole numbers.  These scores are mostly consistent with previously administered vocational testing except that he scored two grade levels higher in *Word Reading*; this is a little unusual.

### *Vocational Analysis*

An analysis of his past work finds that Jewell Ratliff has performed mostly semi-skilled work. Through his reported work experiences, he has demonstrated analyzing (data); instructing (people) and driving-operating (things). Mr. Ratliff has acquired skills, abilities and worker traits that are transferable into other work settings.  He has applied commonsense understanding to carry out instructions. Mr. Ratliff has made decisions and used judgment. In this past work, Jewell Ratliff has performed routine tasks according to set procedures and sequence. He has applied principles of rational thinking to solve practical problems. Mr. Ratliff has directed the activities of others. He can deal with people in a job setting beyond giving and receiving work instructions. He has worked in situations involving frequent changes of tasks using different techniques and procedures. He has adhered to and attained precise set limits and standards. In his past work, Jewell Ratliff has demonstrated average attitude in general intelligence, which means he can learn new job tasks.

The following is will serve as a representative sample competitive location alternative appropriate for someone with the vocational profile of jewel Ratliff and that have tasks mostly consistent with the light in like Dash meeting physical to me and levels

| COMPATIBLE JOB TITLE | ACTUAL LABOR MARKET EARNINGS | MEDIAN HOURLY WAGE* |
|---|---|---|
| Security Dispatcher | $12.00-$14.00 per hour | $19.22 |
| Cashier | $15.00 per hour | $9.81 |
| Unarmed Security Guard | $11.00-$15.00 per hour | $12.48 |
| Scale Operator | $12.00 per hour | $16.86 |

May 12, 2021
John Garner
RE:   JEWELL RATLIFF
Page | 6

| COMPATIBLE JOB TITLE | ACTUAL LABOR MARKET EARNINGS | MEDIAN HOURLY WAGE* |
|---|---|---|
| Spa Attendant | $12.00-$13.00 per hour | $11.35 |
| In-Room Order Taker | $14.00 per hour | $15.05 |
| Courier | $16.00 per hour | $14.31 |
| Assembler | $10.25 -$15.00 per hour | 13.80 |

*US Department of Labor, Bureau of Labor Statistics May 2020

*Impressions*

Jewell Ratliff is a 29-year-old male who makes a very good presentation to others. He is a high school graduate and has completed three years of college. He can read and understand at least simple words and phrases and can perform before basic operations of arithmetic. Mr. Ratliff has performed mostly semi-skilled work and has acquired skills, abilities and worker trades that are transferable into other work settings. In the event that Jewell Ratliff is limited to returning to work at jobs that have test consistent with the Light and Light-Medium physical demand levels, it is my opinion, that he will be employed blood jobs such as those noted in this report.

It is my understanding that Jewell Ratliff will be seen by Ralph Katz, MD at the end of May 2021. We will of course amend our report upon receipt and review of his findings.

Should you need additional information, please let me know.

I reserve the right to amend this report as additional information becomes available.


Very truly yours,

Nancy Favaloro /RH

Nancy T Favaloro, MS, CRC
Licensed Rehabilitation Counselor

NF/rh

Enclosure:  Invoice

# Stephanie P. Chalfin, M.S.

*A Professional Rehabilitation Corporation*
8712 Jefferson Highway, Suite A
Baton Rouge, Louisiana 70809

———

Telephone (225) 248-0082
Telecopier (225) 248-0083
Email: stephchalfin@att.net

March 29, 2021

Mr. Jacob Hargett
Attorney at Law
114 Representative Row
Lafayette, LA 70508

  Re: Jewell Ratliff

Dear Mr. Hargett:

Per your request, a vocational evaluation was conducted regarding Mr. Jewell Ratliff, a 29-year-old male that injured his cervical spine and lumbar spine due to a work-related accident on May 30, 2019. This report will address the impact of Mr. Ratliff's injuries on his employment potential. Additionally, this report will address Mr. Ratliff's current and future medical needs, as dictated by his treating physician, Dr. Joseph Zavatsky.

A meeting was held with Mr. Ratliff on October 08, 2020. Mr. Ratliff was cooperative during this meeting.

In preparation for this preliminary report the following documents were reviewed:

1. Deposition of Jewell Ratliff taken on October 22, 2020;

2. Vessel Accident/Incident Report dated May 30, 2019;

3. Seaman's Suit;

4. Initial Disclosures;

5. Jewell Ratliff's First Set of Interrogatories to Marquette Transportation Company Gulf-Inland, LLC;

6. Personell Records of Marquette Transportaiton Company;



Re:  Jewell Ratliff
     March 29, 2021
     Page 2

7.  Personnel Records of Parking Management Services;

8.  Personnel Records of Crescent Foundations;

9.  Radiology Reports of DIS Diagnostic Imaging Services;

10. Medical Records of Pelican Outpatient Center;

11. Medical Records of Douglas Lurie, M.D.;

12. Medical Records of Walter Ellis, M.D.;

13. Medical Records of Joseph Zavatsky, M.D.;

14. Physical Therapy Records of Moreau Physical Therapy; and

15. Transcript of Holmes Community College.

**Background Information:**

Mr. Ratiff is single and resides in New Orleans, Louisiana. He lives with his girlfriend, Briana May, and their daughter that is 7-months-old.  Mr. Ratliff also has a 5-year-old son from a previous relationship.

Mr. Ratliff possesses a Louisiana Drivers' License.

**Medical History:**

Medical records reflect that Mr. Ratliff sustained injuries to his cervical spine and lumbar spine while employed as a  senior deckhand for Marquette Transportation Company on May 30, 2019. Following the accident, Mr. Ratliff was examined at the Pelican State Outpatient Center for lower back pain. It was recommended that Mr. Ratliff use ice and rest for his lower back. He was also advised to see his primary care physician for blood in his stool.

On June 4, 2019, Dr. Douglas Lurie, an orthopedist, examined Mr. Ratliff for low back pain with numbness in his big toe and pain in his left buttock. Dr, Lurie rendered impressions of 1) Lumbar contusion with left lumbar radicular symptoms; and 2) Left rib contusion. Regarding treatment, a lumbar MRI was ordered and a Medrol Dosepak, Norflex, and Meloxicam were prescribed to address Mr. Ratliff's symptoms.

Re:  Jewell Ratliff
     March 29, 2021
     Page 3

On June 11, 2019, a lumbar MRI was obtained. This study revealed 1) Central disc herniations and annular fissures/tears at L4-L5 and L5-S1 result in (15-20%) central spinal stenosis but no neural foraminal stenosis; and 2) Symmetric disc bulge at L1-L2 without central spinal stenosis or neural foraminal stenosis.

On June 14, 2019, Mr. Ratliff was seen at the orthopedic clinic for a follow-up visit. Dr. Lurie reviewed the MRI scan of June 11, 2019, and recommended physical therapy, as well as a referral to a spine surgeon.

On September 24, 2019, Dr, Lurie reexamined Mr. Ratliff for lower back pain. Mr. Ratliff advised that he attended physical therapy and it helped with the back pain, but he still has leg pain and numbness. Dr. Lurie recommended a lumbar epidural steroid injection on the left at L5-S1 or a left S1 selective nerve root block and a referral to a spine specialist.

On December 10, 2019, Dr. Walter Ellis, a pain management physician, examined Mr. Ratliff for complaints of left-sided lower back pain. Dr. Ellis rendered an assessment of lumbar pain with a complaint of left toe numbness. It was addressed that Mr. Ratliff has a central disc herniation at L4-L5 and L5-S1. Mr. Ratliff was given a home exercise program concentrating on easy chair yoga. If Mr. Ratliff fails easy chair yoga, then he will be a candidate for interventional treatment starting with an epidural steroid injection at the left S1 neural foramen.

On January 14, 2020, Mr. Ratilff presented for follow-up with Dr. Ellis and continued to have some left lower lumbar pain. Dr. Ellis recommended that Mr. Ratliff slowly increase the intensity of his home exercise program and added Tylenol with codeine to be taken at night.

On February 05, 2020, Dr. Joseph Zavatsky, a spine surgeon, examined Mr. Ratliff for complaints of neck pain, headaches, back pain with left leg pain, and numbness. Dr. Zavatsky reviewed the lumbar MRI of June 10, 2019, and discussed that the MRI shows disc herniation at L4-L5 and L5-S1. At L4-L5, there is an associated annular tear. At L5-S1, there is an associated annular tear. The L5-S1 appears to be the worst level. Dr. Zavatsky rendered assessments of 1) Cervicalgia; 2) Cervical neck sprain; 3) Lumbar herniated nucleus pulposus; 4) Lumbar radiculopathy; 5) Lumbago; 6) Lumbar strain; and 7) Spine muscle spasm. In as far as treatment, Dr. Zavatsky recommended an MRI scan of the cervical spine and bilateral epidural steroid injections at L5-S1.

Dr. Ellis reexamined Mr. Ratliff on March 10, 2020. Since the last appointment, Mr. Ratliff has been examined by Dr. Joseph Zavatsky where bilateral L5-S1 epidural steroid injections have been recommended. Dr. Ellis addressed that Mr. Ratliff has failed conservative management and recommended epidural steroid injections.

On April 27, 2020, Dr. Zavatsky had a telemedicine encounter with Mr. Ratliff due to COVID-19. Mr. Ratliff continued to be symptomatic. Dr. Zavatsky's treatment recommendations remained the same.

Re:  Jewell Ratliff
     March 29, 2021
     Page 4

On June 04, 2020, Dr. Zavatsky reexamined Mr. Ratliff. During this clinic visit, Mr. Ratliff complained of neck pain, bilateral shoulder pain, back pain, left greater than right leg pain, and numbness. Dr. Zavatsky recommended bilateral epidural steroid injections at L5-S1 and a cervical MRI scan.

On June 04, 2020, Dr. Zavatsky performed 1) Right L5-S1 transforaminal epidural steroid injection; and 2) Left L5-S1 transforaminal epidural steroid injection.

On June 11, 2020, an MRI of the cervical spine was obtained. This study revealed 1) The cervical canal is small on a congenital basis; and 2) Loss of the normal lordotic curve of the cervical spine is identified and muscle spasm secondary to soft tissue injury.

On July 30, 2020, Mr. Ratliff presented for follow-up with Dr. Zavatsky. Mr. Ratliff reported that the lumbar epidural steroid injections of June 04, 2020, offered him significant relief of his back and leg symptoms for approximately six weeks. However, the back pain has recurred, but his leg pain has not. Mr. Ratliff's primary complaint during this clinic visit is neck pain. Dr. Zavatsky recommended bilateral cervical facet medial branch blocks at C3-C4, C4-C5, and C5-C. If Mr. Ratliff obtains relief from the cervical medial branch blocks, then he would be a candidate for cervical radiofrequency ablation.

On July 30, 2020, Dr. Zavatsky performed 1) Left C3-C4 facet medial branch block; 2) Right C3-C4 facet medial branch block; 3) Left C4-C5 facet medial branch block; 4) Right C4-C5 facet medial branch block; 5) Left C5-C6 facet medial branch block; and 6) Right C5-C6 facet medial branch block.

On September 22, 2020, Mr. Ratliff was seen for a post-procedure follow-up with Dr. Zavatsky. Mr. Ratliff reported that the cervical medial branch blocks that he received on July 30, 2020, continue to offer him relief from his neck pain. However, his primary complaint is low back pain with left leg pain, and numbness. Dr. Zavatsky recommended repeating the bilateral epidural steroid injections at L4-L5. If Mr. Ratliff does not obtain long-term relief of his back and leg symptoms with the repeat injection, then he would be an excellent candidate for bilateral laminoforaminotomies at L4-L5 and L5-S1, with microdiscectomies.

On October 06, 2020, Dr. Zavatsky performed 1) Right L5-S1 transforaminal epidural steroid injection; and 2) Left L5-S1 transforaminal epidural steroid injection.

On November 05, 2020, Mr. Ratliff presented for follow-up with Dr. Zavatsky and reported that over the last 1-2 months his neck pain has become significantly worse. Mr. Ratliff also complained of back and left leg pain with numbness. Dr. Zavatsky recommended bilateral cervical facet radiofrequency ablation, C3-C4, C4-C5, and C5-C6.

Re:  Jewell Ratliff
     March 29, 2021
     Page 5

On November 05, 2020, Dr. Zavatsky performed 1) Destruction paravertebral facet joint nerve, left C3-C4; 2) Destruction paravertebral facet joint nerve, right C3-C4; 3) Destruction paravertebral facet joint nerve, left C4-C5; 4) Destruction paravertebral facet joint nerve, right, C4-C5; 5) Destruction paravertebral facet joint nerve, left C5-C6; and 6) Destruction paravertebral facet joint nerve, right C5-C6.

On January 21, 2021, Dr. Zavatsky performed 1) Right L5-S1 transforaminal epidural steroid injection; and 2) Left L5-S1 transforaminal epidural steroid injection.

Past surgical history is remarkable for right ankle surgery in 2012.

**Physician Conference:**

On March 17, 2021, a conference was held with  Dr. Zavatsky to discuss Mr. Ratliff's medical treatment needs, as well as his vocational parameters. Dr. Zavatsky indicated that Mr. Ratliff is a candidate for repeat bilateral cervical facet radiofrequency ablations, C3-C4, C4-C5, C5-C6. This procedure can be repeated every 6-24 months for the next 10-years. Regarding the lumbar spine, Dr. Zavatsky addressed that Mr. Ratliff can undergo repeat bilateral L5-S1 transforaminal epidural steroid injections until he proceeds with surgery. Mr. Ratliff can have up to 3-injections per year. He will need to be seen at the clinic from 2-4 times per year for 10-years Dr. Zavatsky discussed that  Mr. Ratliff is a candidate for lumbar decompression surgery. Post-surgical care includes visits to the clinic for up to 24-months. A lumbar brace will be ordered, as well as 2-3 months of physical therapy. Dr. Zavatsky also addressed that vocationally Mr. Ratliff is permanently restricted to light work duties.

**Current Symptomology:**

On October 08, 2020, Mr. Ratliff reported lower back pain that radiates into his left buttock and his left leg with burning and numbness.  He also has pain and numbness in his left great toe.  Mr. Ratliff described neck pain with bilateral shoulder pain and stiffness. Symptoms are worse with activities involving prolonged standing, sitting, and walking, as well as bending, squatting, lifting, twisting, cervical hyperextension, overhead reaching, and cervical rotation.

**Educational History:**

Mr. Ratliff graduated from McDonogh 35 Senior High School in New Orleans in 2009. He then attended the University of Kentucky for 1-year on a football scholarship. Mr. Ratliff obtained a GPA of 1.29. From the summer of 2011 to the spring of 2012 Mr. Ratliff attended Holmes Community College in Holmes, Mississippi. Mr. Raliff's attained a GPA of 2.82.  Thereafter, Mr. Ratliff transferred to Tuskegee College in Alabama on a football scholarship. Mr. Ratliff attended Tuskegee College for two years.

Re:  Jewell Ratliff
      March 29, 2021
      Page 6


Mr. Ratliff reported that he has accumulated approximately 2½-years of college credit hours.   His major was sociology.

**Employment History:**

An employment history was obtained from Mr. Ratliff during the vocational evaluation. At the time of this indexed accident, Mr. Ratliff was employed for Marquette Transportation Company as a deckhand. Mr. Ratliff was hired on October 24, 2018, at a daily rate of $130.00. On February 01, 2019, Mr. Ratliff received a rate change to $160.00/per day. Mr. Ratliff reported that at the time of this incident he was a senior deckhand and was anticipating a rate increase.  He also noted that he planned to continue employment as a deckhand, so to gain experience for the promotion to other positions.

A deckhand is classified as a heavy occupation that requires the physical and positional demands of reaching, handling, walking, standing, bending, squatting, twisting, pushing, pulling, cervical rotation, cervical flexion, and hypertension, carrying, and climbing. The working conditions exposed Mr. Ratliff to noise, weather conditions, chemicals, dust, fumes, hazards,  and machinery.

From June 25, 2018, to September 19, 2018, Mr. Ratliff worked for Crescent Foundations as a laborer. His hourly rate of pay was $14.00. He was released from employment due to a lack of work.

In 2018 Mr. Ratliff worked for the Greater New Orleans Charter Collaborative of Charter Schools at McDonogh 35 Senior High School as a behavior interventionist.  Mr. Ratliff advised that he worked in a para-professional capacity with students in the 9th to 12th grades that were in-school detention.

In 2017 Mr. Ratlif was employed at McDonogh 35 Senior High School as a football coach.

From October 27, 2016, to January 23, 2017, Mr. Ratliff worked for Parking Management Services as a valet driver/runner.

Other past work efforts reveal employment in 2013 at a concession stand at Audubon Nature Institute and employment as a janitor for Empire Janitorial Sales and Services.

A review of Mr. Ratliff's work history was conducted utilizing the Dictionary of Occupational Titles, ONET, Guide to Rehabilitation, Transitional Classification of Job, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, and Rehabilitation Consultants Handbook. Mr. Ratliff has been employed in unskilled, semi-skilled, and skilled occupations that have warranted light, medium, and heavy material handling job duties. The physical demands of Mr. Ratliff's past employments include reaching, handling, walking, standing, sitting, bending, squatting, twisting, pushing, pulling, climbing,

Re: Jewell Ratliff
    March 29, 2021
    Page 7

carrying, cervical rotation, and cervical flexion and hyperextension. The working conditions exposed Mr. Ratliff to noise, extremes of temperature, hazards, dust, fumes, chemicals, and air-conditioning.

Through Mr. Ratliff's work history he has performed job duties that involved 1) working with students with behavior issues to implement in-school suspensions; 2) planning, organizing, and conducting practice football sessions; 3) identifying the needs of others; 4) coaching and mentoring others to improve their knowledge and skills; 5) the ability to use tools and equipment; 6) inspection of equipment, structures, and materials; 7) manual dexterity; and 8) monitoring processes.

**Testing:**

The Wide Range Achievement Test was given to assess Mr. Ratliff's academic skills. Mr. Ratliff obtained the following scores compared to normative data:

| Subtest | Standard Score | Percentile Rank | Grade Equivalent |
|---|---|---|---|
| Word Reading | 87 | 19 | 8.8 |
| Spelling | 71 | 3 | 4.6 |
| Math Computation | 81 | 10 | 4.6 |
| Sentence Comprehension | 77 | 6 | 5.0 |

**Summary:**

In summary, Mr. Ratliff is a 29-year-old male who injured his cervical spine and lumbar spine while employed as a senior deckhand for Marquette Transportation Company on May 30, 2019. A conference was held with Dr. Zavatsky in which he recommended pain management treatment for the cervical spine and surgical treatment for the lumbar spine. The treatment recommendations of Dr. Zavatsky are delineated in the attached charts with the associated costs. Dr. Zavatsky also determined that due to Mr. Raliff's injuries, he is permanently restricted to light work duties.

Mr. Ratliff's vocational profile reveals handicapping factors that will need to be addressed in a vocational rehabilitation context such as his physical restrictions, pain, academic deficits, and past work history. It is recommended that Mr. Ratliff be provided with vocational rehabilitation services at the appropriate medical juncture. Services should focus on career counseling, job readiness preparation, and job placement assistance. A review of Mr. Ratliff's general labor market area revealed employment considerations and include cashier, counter attendant, front desk attendant/health club, and customer service assistant. The wages for these positions range from $9.00-$11.00/per hour.

In closing, the injuries Mr. Ratliff sustained in the accident of May 30, 2019, will adversely impact his future vocational development and ability to earn wages.

Re:  Jewell Ratliff
     March 29, 2021
     Page 8

Sincerely,

Stephanie P. Chalfin, M.S.
**Vocational Rehabilitation Consultant**
**Certified Life Care Planner**

SPC:al
**Attachments**